13

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA

Plaintiff,

v.

LIFE FOR RELIEF AND DEVELOPMENT,
KHALIL JASSEMM,

Defendants.
_______________________________/

Case: 2:07-cr-20438
Assigned To: Cleland, Robert H
Referral Judge: Scheer, Donald A
Filed: 09-05-2007 At 04:35 PM
indi USA V. SEALED MATTER (2 DFTS)
TAM

VIOLATIONS: 18 U.S.C. §§ 2, 371, 1956(a)(2)(A), 1956(h); 50 U.S.C. § 1705(b)

**INDICTMENT**

THE GRAND JURY CHARGES

**COUNT 1**

**(Conspiracy - 18 U.S.C. § 371; 50 U.S.C. § 1705(b))**

D-2 KHALIL JASSEMM

**General Allegations**

At all times material to this Indictment:

1. Defendant LIFE FOR RELIEF AND DEVELOPMENT ("LRD") is an Islamic charity created after the first Gulf War that has purported to benefit non-political, humanitarian causes. After incorporating in 1992 in California as a public benefit corporation called "International Relief Association, Inc.," in 1994 the organization applied for authority to transact business in Michigan. Since 1997, the organization has been headquartered at 17300 West Ten Mile Road, Southfield Michigan. In 1999, the organization changed its name to LIFE FOR

RELIEF & DEVELOPMENT.

2. Defendant KHALIL JASSEMM, a citizen of Iraq and a permanent resident of the United States, was the President and/or Chief Executive Officer of defendant LRD from the organization's inception until approximately July 2007. As such, defendant JASSEMM had authority to disburse funds on behalf of defendant LRD. From approximately 1996 to January 2007, defendant JASSEMM lived and worked in the Eastern District of Michigan, Southern Division.

3. Defendant LRD's Articles of Incorporation, which were made part of its application to the Internal Revenue Service for tax-exempt status, state that its "specific purpose . . . is to provide humanitarian assistance to poor and needy people throughout the world irrespective of their race, sex, nationality, color or religion." Notwithstanding this provision, the vast majority of the funds sent overseas by defendant LRD were destined for Iraq.

4. Unindicted co-conspirator number one is the former director of Middle East operations for the Islamic Relief Agency ("ISRA"), located in Amman, Jordan.

5. Unindicted co-conspirator number two is a former employee of Human Appeal International ("HAI"), located in Amman, Jordan, and a current employee of defendant LRD's Amman, Jordan office.

6. Under the International Emergency Economic Powers Act (Title 50, United States Code, Sections 1701 through 1706) (IEEPA), the President of the United States has the authority to deal with unusual or extraordinary threats to the national security and foreign policy of the United States. This authority includes investigating, regulating, and prohibiting any transaction involving any interest of a foreign country or national thereof related

to a Presidentially declared national emergency. The President's formal directives in this regard are issued through Executive Orders which have the force and effect of law.

7. On or about August 2, 1990, under the authority of IEEPA, and following Iraq's invasion of Kuwait, President George H. W. Bush issued Executive Order 12722, which declared a national emergency with respect to Iraq. According to the directive, the policies and actions of the Government of Iraq constituted an unusual and extraordinary threat to the national security and foreign policy interests of the United States. On or about August 9, 1990, the President issued Executive Order 12724, which proscribed specific conduct related to these national security concerns and empowered the Secretary of the Treasury to promulgate regulations and take other action necessary to fully realize the purposes of these Executive Orders. Thereafter, Presidents of the United States continued to declare, on an annual basis, the national emergency with respect to Iraq.

8. Pursuant to this authority, the Secretary of Treasury issued the Iraqi Sanctions Regulations, Title 31, Code of Federal Regulations, Part 575. These regulations are administered and enforced by the Department of Treasury's Office of Foreign Assets Control ("OFAC") and prohibited, among other things: (a) the unauthorized transfer, direct or indirect, of funds or other financial or economic resources to the Government of Iraq or to any person in Iraq; (b) the unauthorized export of goods, technology, or services from the United States to a third country that were intended for further shipment to Iraq; (c) any transaction for the purpose of, or which had the effect of, evading or avoiding the Iraqi Sanctions Regulations; and, (d) any conspiracy formed for the purpose of engaging in a transaction prohibited by the regulations.

9. The Iraqi Sanctions Regulations allowed Non-Governmental Organizations

("NGOs") such as defendant LRD to apply for a license enabling the NGO to engage in humanitarian activities in Iraq and to move in-kind (*i.e.*, non-monetary) supplies and materials into Iraq. If approved, the NGO received a limited license from OFAC authorizing the NGO to undertake specifically approved activities. LRD never received a license from OFAC authorizing it to deliver or transfer, directly or indirectly, funds or other financial or economic resources into Iraq. The four limited licenses obtained by LRD allowed the organization only to ship in-kind materials and supplies into Iraq, and these licenses specifically prohibited any transfer of funds or other financial or economic resources to or for the benefit of the Government of Iraq or a person in Iraq.

10. On or about May 23, 2003, after the fall of the Saddam Hussein regime, OFAC issued a General License that suspended most economic sanctions against Iraq, including those described herein. On or about July 29, 2004, the President declared the national emergency regarding Iraq to be over.

**The Conspiracy**

11. Beginning in or about March 1993 and continuing until in or about May 2003, in the Eastern District of Michigan, Southern Division and elsewhere, defendant KHALIL JASSEMM, unindicted co-conspirator number one, and unindicted co-conspirator number two, conspired and agreed with each other, and others known and unknown to the Grand Jury, to act unlawfully by knowingly and willfully transferring funds or other financial or economic resources from the United States into Iraq, by and through Amman, Jordan, without having obtained prior authorization from the Secretary of Treasury, in violation of Title 50, United States Code, Section 1705(b), Executive Orders 12722 and 12724, and Title 31, Code of Federal

Regulations, Sections 575.210 and 575.211.

**Manner and Means**

It was part of the conspiracy that:

12. Defendant JASSEMM caused funds (Charitable Proceeds) to be transferred from LRD's bank accounts in the Eastern District of Michigan, Southern Division to bank accounts of the unindicted co-conspirators in Amman, Jordan, with the intent that these Charitable Proceeds, less service fees for the unindicted co-conspirators, (Net Proceeds) would be transferred to Iraq.

13. Defendant JASSEMM directed the unindicted co-conspirators to transfer the Net Proceeds to Iraq.

14. The unindicted co-conspirators transferred, and caused to be transferred, the Net Proceeds to Iraq.

15. Defendant LRD failed to document, and maintained inadequate records detailing, the use of its funds.

16. Defendant LRD did not to disclose to OFAC that defendant LRD's funds were to be, or had been, transferred into Iraq.

**Overt Acts**

17. In furtherance of the conspiracy, and to accomplish its purposes, on or about the dates and in the approximate amounts set forth below, defendant JASSEMM committed, and caused to be committed, the following overt acts, among others, transferring funds or other financial or economic resources from the United States to Amman, Jordan, for ultimate transfer into Iraq, which transactions were subject to Executive Orders 12722 and 12724, and the Iraqi Sanctions Regulations:

| OVERT ACTS (TRANSFERS) | CALENDAR YEAR OF TRANSFERS | APPROXIMATE AMOUNT OF TRANSFERS |
|---|---|---|
| 1-9 | 1995 | $1,183,000 |
| 10-18 | 1996 | $874,000 |
| 19-26 | 1997 | $483,000 |
| 27-47 | 1998 | $1,328,250 |
| 48-82 | 1999 | $1,821,750 |
| 83-105 | 2000 | $1,353,361 |
| 106-124 | 2001 | $1,830,307 |
| 125 | 2002 | $166,400 |
| 126-127 | 2003 | $91,300 |

Each individual transfer alleged herein as an overt act is set forth on Table 1 to this Indictment.

All in violation of Title 18 United States Code, Section 371; Title 50 United States Code, Section 1705(b); Executive Orders 12722 and 12724; and Title 31, Code of Federal Regulations, Sections 575.210 and 575.211.

## COUNTS 2 THROUGH 4

**(International Emergency Economic Powers Act - 50 U.S.C. § 1705(b), 18 U.S.C. § 2)**

D-1 LIFE FOR RELIEF AND DEVELOPMENT

D-2 KHALIL JASSEMM

18. The allegations contained in paragraphs 1 through 10 of Count One of this Indictment are hereby re-alleged and incorporated by reference as if fully set forth herein.

19. On or about the dates and in the amounts set forth below, in the Eastern District of Michigan, Southern Division and elsewhere, defendants LRD and KHALIL JASSEMM, and unindicted co-conspirator number one and unindicted co-conspirator number two, aided and abetted by each other, unlawfully, knowingly, and willfully transferred, and attempted to transfer, funds or other financial or economic resources from the United States to Iraq, by and through Amman, Jordan, without having obtained prior authorization from the Secretary of Treasury.

| COUNT | DATE OF WIRE TRANSFER | AMOUNT |
|---|---|---|
| 2 | September 10, 2002 | $153,000 |
| 3 | January 31, 2003 | $33,000 |
| 4 | March 19, 2003 | $50,000 |

All in violation of Title 50, United States Code, Section 1705(b); Title 18, United States Code, Section 2; Executive Orders 12722 and 12724; Title 31, Code of Federal Regulations, Sections 575.210 and 575.211.

**COUNT 5**

**(Money Laundering Conspiracy - 18 U.S.C. § 1956(h))**

D-1 KHALIL JASSEMM

20. The allegations contained in paragraphs 1 through 10 of Count One of this Indictment are hereby re-alleged and incorporated by reference as if fully set forth herein.

21. Beginning in or about March 1993 and continuing until in or about March 2003, in the Eastern District of Michigan, Southern Division and elsewhere, defendant KHALIL JASSEMM, unindicted co-conspirator number one, and unindicted co-conspirator number two, conspired and agreed with each other and others known and unknown to the Grand Jury, to knowingly transport, transmit, and transfer, and attempt to transmit, transport, and transfer, a monetary instrument and funds from a place in the United States to a place outside the United States, that is, Amman, Jordan with the intent to promote the carrying on of specified unlawful activity, that is, the unlawful transporting, transmitting, and transferring of funds or other financial or economic resources to Iraq, in violation of 50 U.S.C. § 1705(b) and 18 U.S.C. § 1956(a)(2)(A).

All in violation of Title 18, United States Code, Section 1956(h).

**COUNTS 6 THROUGH 8**

**(Money Laundering - 18 U.S.C. §§ 1956(a)(2)(A) and 2)**

D-1 LIFE FOR RELIEF AND DEVELOPMENT

D-2 KHALIL JASSEMM

22. The allegations contained in paragraphs 1 through 10 of Count One of this Indictment are hereby re-alleged and incorporated by reference as if fully set forth herein.

23. On or about the dates and in the approximate amounts set forth below, in the Eastern District of Michigan, Southern Division and elsewhere, defendants LRD and KHALIL JASSEMM, and unindicted co-conspirator number one and unindicted co-conspirator number two, aided and abetted by each other, did knowingly transport, transmit, and transfer, and attempt to transmit, transport, and transfer, a monetary instrument and funds, from a place in the United States to a place outside the United States, that is, Amman, Jordan, with the intent to promote the carrying on of specified unlawful activity, that is, the unlawful transporting, transmitting, and transferring of funds or other financial or economic resources to Iraq, in violation of 50 U.S.C. § 1705(b).

| COUNT | DATE OF WIRE TRANSFER | APPROXIMATE AMOUNT |
|---|---|---|
| 6 | September 10, 2002 | $166,400 |
| 7 | January 31, 2003 | $36,300 |
| 8 | March 19, 2003 | $55,000 |

All in violation of Title 18, United States Code, Sections 1956(a)(2)(A) and 2.

THIS IS A TRUE BILL

______________________________
Foreperson

MICHAEL J. MULLANEY
Acting United States Attorney

MICHAEL D. TAXAY
Trial Attorney
National Security Division
U.S. Department of Justice

KARL A. SANDOVAL
Trial Attorney
National Security Division
U.S. Department of Justice

Dated: September 5, 2007

**TABLE 1**

| OVERT ACT | APPROXIMATE DATE OF TRANSFER | APPROXIMATE AMOUNT OF TRANSFER |
|---|---|---|
| | | |
| 1 | February 9, 1995 | $153,000 |
| 2 | February 15, 1995 | $150,000 |
| 3 | April 4, 1995 | $150,000 |
| 4 | June 12, 1995 | $180,000 |
| 5 | June 28, 1995 | $180,000 |
| 6 | August 11, 1995 | $55,000 |
| 7 | October 24, 1995 | $15,000 |
| 8 | November 27, 1995 | $100,000 |
| 9 | December 13, 1995 | $200,000 |
| 10 | January 10, 1996 | $207,000 |
| 11 | February 13, 1996 | $140,000 |
| 12 | February 27, 1996 | $160,000 |
| 13 | June 28, 1996 | $55,000 |
| 14 | August 2, 1996 | $83,000 |
| 15 | October 2, 1996 | $22,000 |
| 16 | October 16, 1996 | $100,000 |
| 17 | November 13, 1996 | $17,000 |
| 18 | December 30, 1996 | $90,000 |
| 19 | January 28, 1997 | $65,000 |
| 20 | February 7, 1997 | $100,000 |
| 21 | April 11, 1997 | $100,000 |
| 22 | May 20, 1997 | $100,000 |
| 23 | July 10, 1997 | $72,000 |
| 24 | October 1, 1997 | $15,000 |
| 25 | November 26, 1997 | $11,000 |
| 26 | December 16, 1997 | $20,000 |
| 27 | January 7, 1998 | $170,000 |
| 28 | January 15, 1998 | $150,000 |
| 29 | January 30, 1998 | $150,000 |
| 30 | February 2, 1998 | $150,000 |
| 31 | March 2, 1998 | $162,000 |
| 32 | April 21, 1998 | $22,000 |
| 33 | April 22, 1998 | $3,000 |
| 34 | April 28, 1998 | $21,000 |
| 35 | May 15, 1998 | $156,000 |
| 36 | June 19, 1998 | $25,000 |
| 37 | July 19, 1998 | $15,000 |
| 38 | July 31, 1998 | $50,000 |
| 39 | August 20, 1998 | $100,000 |
| 40 | September 28, 1998 | $20,000 |
| 41 | October 1, 1998 | $20,000 |
| 42 | October 1, 1998 | $15,000 |
| 43 | October 20, 1998 | $15,000 |
| 44 | November 5, 1998 | $7,250 |
| 45 | November 9, 1998 | $20,000 |
| 46 | December 3, 1998 | $41,000 |
| 47 | December 22, 1998 | $16,000 |
| 48 | January 6, 1999 | $115,000 |
| 49 | January 11, 1999 | $22,000 |
| 50 | January 19, 1999 | $181,000 |
| 51 | January 26, 1999 | $88,000 |
| 52 | February 10, 1999 | $14,000 |
| 53 | February 10, 1999 | $256,000 |
| 54 | March 11, 1999 | $114,250 |
| 55 | March 12, 1999 | $13,000 |
| 56 | March 31, 1999 | $75,000 |
| 57 | April 14, 1999 | $32,000 |
| 58 | April 30, 1999 | $40,000 |
| 59 | May 11, 1999 | $10,000 |
| 60 | June 1, 1999 | $11,050 |
| 61 | June 21, 1999 | $13,000 |

| | | |
|---|---|---|
| 62 | June 21, 1999 | $90,000 |
| 63 | July 1, 1999 | $25,750 |
| 64 | July 13, 1999 | $15,000 |
| 65 | July 20, 1999 | $68,000 |
| 66 | July 29, 1999 | $20,000 |
| 67 | August 2, 1999 | $50,000 |
| 68 | August 16, 1999 | $15,000 |
| 69 | August 20, 1999 | $10,000 |
| 70 | September 1, 1999 | $20,000 |
| 71 | September 15, 1999 | $26,500 |
| 72 | September 27, 1999 | $16,000 |
| 73 | October 8, 1999 | $60,000 |
| 74 | October 8, 1999 | $40,000 |
| 75 | November 4, 1999 | $20,000 |
| 76 | November 19, 1999 | $69,000 |
| 77 | December 7, 1999 | $50,000 |
| 78 | December 20, 1999 | $22,000 |
| 79 | December 23, 1999 | $80,000 |
| 80 | December 27, 1999 | $15,000 |
| 81 | December 29, 1999 | $27,000 |
| 82 | December 29, 1999 | $98,200 |
| 83 | February 4, 2000 | $134,783 |
| 84 | February 9, 2000 | $30,000 |
| 85 | March 2, 2000 | $117,000 |
| 86 | March 13, 2000 | $140,000 |
| 87 | March 28, 2000 | $110,000 |
| 88 | April 6, 2000 | $35,000 |
| 89 | May 9, 2000 | $35,000 |
| 90 | June 29, 2000 | $84,388 |
| 91 | June 29, 2000 | $40,000 |
| 92 | August 9, 2000 | $50,000 |
| 93 | September 12, 2000 | $22,000 |
| 94 | September 28, 2000 | $79,000 |
| 95 | September 28, 2000 | $33,000 |
| 96 | October 25, 2000 | $50,000 |
| 97 | October 25, 2000 | $12,000 |
| 98 | November 14, 2000 | $20,000 |
| 99 | November 22, 2000 | $29,040 |
| 100 | November 22, 2000 | $55,500 |
| 101 | December 13, 2000 | $45,000 |
| 102 | December 18, 2000 | $100,000 |
| 103 | December 22, 2000 | $71,250 |
| 104 | December 22, 2000 | $26,200 |
| 105 | December 22, 2000 | $34,200 |
| 106 | January 8, 2001 | $50,000 |
| 107 | January 8, 2001 | $92,698 |
| 108 | January 16, 2001 | $205,000 |
| 109 | February 8, 2001 | $140,000 |
| 110 | February 20, 2001 | $6,400 |
| 111 | March 21, 2001 | $100,000 |
| 112 | April 24, 2001 | $240,442 |
| 113 | May 29, 2001 | $10,050 |
| 114 | June 20, 2001 | $71,000 |
| 115 | June 20, 2001 | $105,000 |
| 116 | July 20, 2001 | $20,550 |
| 117 | July 20, 2001 | $102,046 |
| 118 | August 21, 2001 | $11,000 |
| 119 | September 5, 2001 | $113,821 |
| 120 | October 3, 2001 | $81,000 |
| 121 | October 3, 2001 | $70,200 |
| 122 | November 29, 2001 | $215,600 |
| 123 | November 29, 2001 | $28,500 |
| 124 | December 21, 2001 | $167,000 |
| 125 | September 10, 2002 | $166,400 |
| 126 | January 31, 2003 | $36,300 |
| 127 | March 19, 2003 | $55,000 |

0

| United States District Court<br>Eastern District of Michigan | Criminal Case Co |
|---|---|

Case: 2:07-cr-20438
Assigned To: Cleland, Robert H
Referral Judge: Scheer, Donald A
Filed: 09-05-2007 At 04:35 PM
indi USA V. SEALED MATTER (2 DFTS)
TAM

**NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to c**

| Companion Case Information | Companion Case Number: |
|---|---|
| This may be a companion case based upon **LCrR 57.10 (b)(4)**[1]: | **Judge Assigned:** |
| ☐ **Yes** ☐ **No** | **AUSA's Initials:** |

**Case Title:** USA v. LIFE FOR RELIEF AND DEVELOPMENT and KHALIL JASSEMM

**County where offense occurred :** Oakland County

**Check One:** **X Felony** ☐ **Misdemeanor** ☐ **Petty**

_X_Indictment/____Information --- **no** prior complaint.
____Indictment/____Information --- based upon prior complaint
____Indictment/____Information --- based upon **LCrR 57.10 (d)**

## Superseding Case Information:

**Superseding to Case No:** __________ **Judge:** __________

☐ Original case was terminated; no additional charges or defendants.
☐ Corrects errors; no additional charges or defendants.
☐ Involves, for plea purposes, different charges or adds counts.
☐ Embraces same subject matter but adds the additional defendants or charges below:

| Defendant name | Charges |
|---|---|
| Life for Relief and Development | 18 U.S.C. §§ 2, 1956(a)(2)(A); and 50 U.S.C. § 1705(b) |
| Khalil Jassemm | 18 U.S.C. §§ 2, 371, 1956(a)(2)(A), 1956(h); and 50 U.S.C. § 1705(b) |

**Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.**

September 5, 2007
Date

Michael D. Taxay

MICHAEL D. TAXAY
Trial Attorney
10th & Constitution Ave., N.W.
Washington, D.C. 20530
Phone: (202) 514-9473
Fax: (202) 514-8714
E-Mail address: michael.taxay@usdoj.gov

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.